1  Kristin Zilberstein, Esq., (SBN 200041)
   Jennifer R. Bergh, Esq., (SBN 305219)
2  LAW OFFICES OF MICHELLE GHIDOTTI
3  1920 Old Tustin Ave.
   Santa Ana, CA 92705
4  Tel: (949) 427-2010
   Fax: (949) 427-2732
5  mghidotti@ghidottilaw.com
6
   Attorneys for Movant,
7  U.S. Bank Trust N.A., as Trustee of the
   Igloo Series III Trust, its successors and assigns
8
9                UNITED STATES BANKRUPTCY COURT
10
        NORTHERN DISTRICT OF CALIFORNIA — SAN JOSE DIVISION
11
12  In Re:                              )  CASE NO.: 13-54453
                                        )
13  Kent Brian Zilliox,                 )  CHAPTER 13
                                        )
14       Debtor.                        )  REF.: MRG-1
                                        )
15                                      )
                                        )  **DECLARATION IN SUPPORT OF**
16                                      )  **MOTION FOR RELIEF FROM THE**
                                        )  **AUTOMATIC STAY**
17                                      )
                                        )
18                                      )  DATE:  September 5, 2018
                                        )  TIME:  11:30 a.m.
19                                      )  PLACE: U.S. Bankruptcy Court
                                        )          1000 South Main St., Ste. 214
20                                      )          Salinas, CA 93901
                                        )  Honorable Hannah L. Blumenstiel
21                                      )
                                        )
22                                      )
                                        )
23                                      )
                                        )
24                                      )
                                        )
25                                      )
                                        )
26                                      )
                                        )
27                                      )
28
    ///

                                    1
    ─────────────────────────────────────────────────────────
    DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM STAY

I, *Raymond Valderrama*, declare:

1. I am employed by BSI Financial Services, servicing agent for U.S. Bank Trust N.A., as Trustee of the Igloo Series III Trust ("**Movant**") as **BK Supervisor**

2. I make this declaration based upon the facts testified herein, all of which are in my personal knowledge, unless stated upon information and belief. As to the statements made upon information and belief, I believe them to be true. If called as a witness, I could and would competently testify thereto.

3. I am personally familiar with the books, records and files of Movant that pertain to loans and extensions of credit given to Kent Brian Zilliox (hereinafter referred to as "**Debtor**") concerning the property commonly known as 4A Buena Vista Del Rio, Carmel Valley, CA 93924 (the "**Property**"). I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

4. Debtor executed and delivered to Golden West Savings Association Service Co., a Note, dated December 3, 2007, with an original principal balance of $774,400.00 (the "**Note**"). A true and correct copy of the Note is attached as Exhibit "1" and incorporated herein by reference.

5. Movant is the current owner of the Note and is in possession of the original Note.

6. Concurrently therewith, and as security for the Note, Debtor executed and delivered to Golden West Savings Association Service Co., a Deed of Trust which was recorded in the Official Records of Monterey County, California as Document No.:

2

DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM STAY

| 1 | 2007090124 (the **"Deed of Trust"**), and which encumbers the Property.  A true and correct |
| 2 | copy of the Deed of Trust is attached hereto as Exhibit "2" and is incorporated herein by |
| 3 | reference. |

7.  Thereafter all interests in the Deed of Trust were assigned by Assignment of Deed of Trust to Movant.  A true and correct copy of each Assignment is attached hereto as Exhibit "3" and is incorporated herein by reference.

8.  Pursuant to the Deed of Trust, Movant is entitled to recover attorneys' fees and costs in connection with the matter herein.

9.  Pursuant to the Deed of Trust, Movant is entitled to take the necessary steps to protect its security interest in the Property, including advancing taxes, insurance, foreclosure fees and costs and attorney's fees and costs and to assess the costs plus interest, to the balance due under the loan.

10. Movant's loan is post-petition due for the thirteen (13) post-petition monthly mortgage  payments as follows:

| 07/15/2017-08/15/2017 | 2 Payments @ $4,615.88 | = $9,231.76 |
| 09/15/2017-01/15/2018 | 5 Payments @ $4,620.21 | = $23,101.05 |
| 02/15/2018-07/15/2018 | 6 Payments @ $4,709.70 | = $28,258.20 |
| 07/01/2018 | Attorney fees and costs | = $1,081.00 |
| **Total Default** | | **= $61,672.01** |

11. Pursuant to Local Bankruptcy Rule 4001-1 (g)(1), a true and correct copy of an Account Statement outlining unpaid post-petition obligations is attached hereto as Exhibit "4" and incorporated herein by reference.

11. The current unpaid principal balance is no less than approximately $659,150.90.

12. The total owed to Movant is no less than approximately $712,002.56.

13. The Debtor's confirmed Chapter 13 Plan indicates the Debtor will make monthly mortgage payments directly to Movant.  However, the Debtor is not current with their monthly mortgage payments to Movant and thus have failed to comply with the terms of their Chapter 13 Plan.

DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM STAY

1    14. Movant has not been contacted by the Debtor regarding a loan modification.

2    15. Movant seeks relief from stay herein to proceed with its non-bankruptcy remedies

3    including, but not limited to, continuing its efforts to foreclose upon the Property, obtaining

4    possession of and selling the Property.

5        I declare under penalty of perjury under the laws of the United States of America that

6    the foregoing is true and correct and executed this _20_ day of _July_, 2018 at

7    _Irvine_, _California_.

8

9                                                    _Declarant_

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    4

# EXHIBIT "1"

**WORLD SAVINGS BANK, FSB**

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT sm LOAN

### WACHOVIA AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER: REDACTED                                    DATE: **November 20, 2007**

BORROWER(S): **KENT ZILLIOX, A MARRIED MAN**   sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS: **4A BUENA VISTA DEL RIO, CARMEL VALLEY, CA  93924-9713**

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$774,400.00** , called "Principal," plus interest, and any other charges incurred during the course of the loan, to the order of the Lender. The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK,** ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

### 2.  INTEREST

(A)   Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at the yearly rate of **8.100%** . The interest rate I will pay  may change as described in this Section 2.  Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B)   Interest Change Dates

The interest rate I will pay may change on the **15th** day of **January, 2008** and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

(C)   Interest Rate Limit

My lifetime maximum interest rate limit is **11.950%**, called "Lifetime Rate Cap."

REDACTED

LENDER'S USE ONLY

SD253A (2006-09-4)                 ADJUSTABLE PICK-A-PAYMENT NOTE                 **CA**
                                                      Page 1

**(D) Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The Index is the "Cost of Savings Index" as published by Wachovia Corporation. The Cost of Savings Index is the weighted average of the interest rates in effect as of the last business day of each calendar month on the U.S. dollar denominated personal time deposits (as defined by the Board of Governors of the Federal Reserve System for purposes of reporting deposits on FR 2900 by commercial banks) held by the U.S. branches and non-U.S. military facilities of the depository institution subsidiaries of Wachovia Corporation that hold federally insured deposits.

For this purpose, a business day is any calendar day other than Saturday, Sunday, or any legal holiday for national banks.

The Index will be published monthly by Wachovia Corporation, on or before the fifteenth day of each month, and made readily available. The most recent Index figure available on each Interest Change Date is called the "Current Index".

If an Index is substituted pursuant to section 2(F) of this Note, the alternate index will become the Index.

**(E) Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **3.250** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F) Alternate Index**

The Lender may choose an alternate index if the Index is no longer available. For purposes of this Section 2(F), the Cost of Savings Index or an alternate index is no longer available if:

(1)    The Lender, in its sole discretion, determines that (a) the Board of Governors of the Federal Reserve System has made a material change in the definition of personal time deposits or time deposits for purposes of reporting deposits on FR 2900 or a comparable successor report; or (b) the Index is otherwise calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or

(2)    Applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note.

The selection of an alternate index shall be at Lender's sole discretion. The alternate index may be a national or regional index or another type of index accepted or approved by the Lender's primary regulator. The Lender will give me notice of the alternate index.

**3.   PAYMENTS**

**(A)   Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **15th** day of each month beginning on **January 15, 2008**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **December 15, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **2,843.01**. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)   Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **15th** day of **JANUARY, 2009** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, together with interest at the interest rate in effect on the day of calculation by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

Case: 13-54453    Doc# 39-2    Filed: 07/25/18    Entered: 07/25/18 15:34:40    Page 7 of 40

**(E)  Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)  Payment Cap Limitation; Exceptions**

Beginning with the 10th Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)  Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.  FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.  MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be 5.00% of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **4A BUENA VISTA DEL RIO, CARMEL VALLEY, CA 93924-9713**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor, notice of acceleration, and protest. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26:**

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

SD253D (2006-09-4)     [D02 (2006-09-4)]         ADJUSTABLE PICK-A-PAYMENT NOTE                     CA
Page 4

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

      (i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

      (ii)    Lender approves the creditworthiness of the transferee in writing;

      (iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

      (iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

      (v)    the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 12. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

## 13. CLERICAL ERRORS

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

## 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS**

Case: 13-54453   Doc# 39-2   Filed: 07/25/18   Entered: 07/25/18 15:34:40   Page 10 of 40

REDACTED

**SIGNATURE PAGE**

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____  (Seal)
KENT ZILLIOX

WITHOUT RECOURSE
PAY TO THE ORDER OF
WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER
WITH WELLS FARGO BANK SOUTHWEST, N.A. F/K/A
WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS
BANK, FSB
BY _____

GEORGIANA M. SJELENI
VICE PRESIDENT LOAN DOCUMENTATION

SD2S3 (2004-03-1)        [W14 (2004-03-01)]        Page 6 of 6                CA

Date of this Agreement: February 24, 2010
Note known as Loan Number: REDACTED
Property Address: 4A     BUENA VISTA DEL RIO
CARMEL VALLEY, CA 93924
Existing Principal Balance: $ 812,348.48
Return Date for this Agreement: March 6, 2010

## MODIFICATION AGREEMENT

This Modification Agreement ("Agreement") is made as of the date above between the undersigned ("Borrower"), as obligor(s) on the Loan described above or as title holder(s) to the Property, as the context may require, and Wells Fargo Bank, N.A. ("Lender"). Borrower agrees that, except as expressly modified in this Agreement, the Note and the Security Instrument remain in full force and effect and are valid, binding obligations upon Borrower, except as discharged in Bankruptcy, and are properly secured by the Property.

Unless this Agreement is executed without alteration and returned by the Return Date above this Agreement will be of no force or effect and the Loan will remain subject to all existing terms and conditions provided in the Note and Security Instrument. This Agreement will only be deemed received when actually received by Lender at: Wachovia Mortgage, Loan Modifications, T7416-010, PO Box 659558, San Antonio, Texas, 78265-9558.

1. If outstanding and owed as of the Date of this Agreement, Lender agrees to:
a. Waive all outstanding Late Charge and Return Check Fees on the Loan; and
b. Add amounts owed for "Escrow Amounts Advanced," "Foreclosure Fees," "Attorney's Fees," and "Property Inspection Fees" to the Loan balance.

2. Lender and Borrower further agree to modify the Loan as follows:
a. Forgive accrued, outstanding, and not capitalized interest through     March 14, 2010
b. The balance owed on the Loan will be     $ 666,125.75
c. The maturity date of the Loan is     March 15, 2050
d. The Interest Only payment(s) on the Loan will be as follows:

| Payment Due Date | Payment (Interest Only) | Interest Rate | Interest Rate Eff. Date |
|---|---|---|---|
| 04/15/2010 | $ 3,053.08 | 5.500% | 03/15/2010 |
| 04/15/2011 | $ 3,122.47 | 5.625% | 03/15/2011 |
| 04/15/2012 | $ 3,191.86 | 5.750% | 03/15/2012 |
| 04/15/2013 | $ 3,261.25 | 5.875% | 03/15/2013 |
| 04/15/2014 | $ 3,330.63 | 6.000% | 03/15/2014 |
| 04/15/2015 | $ 3,400.02 | 6.125% | 03/15/2015 |

e. Principal and Interest Payment for the remaining term of the Loan:

| | | | |
|---|---|---|---|
| 04/15/2016 | $ 4,055.77 | 6.500% | 03/15/2016 |

1 of 2

REDACTED



Mail Workspace
MAR 0 4 2010

Monthly payments will be due on the same day of each month. Each Interest Rate will go into effect on the corresponding Interest Rate Effective Date. **The payments above DO NOT include amounts necessary for escrow.** Each Payment under 2(d) is an interest only payment calculated at the interest rate specified. The payment under 2(e) is the principal and interest payment for the remainder of the term calculated at the interest rate specified.

3. The Interest Change Dates, Calculation of Interest Rate Changes, Payment Change Dates, Calculation of Payment Changes, Index and Payment Cap Limitation no longer apply.

4. The Loan may not be assumed by any other person or entity.

5. If a biweekly loan, the Loan will convert to a monthly payment schedule. References to "biweekly," "every two weeks," and "every other Monday" shall be read as "monthly," except as it relates to the Modified Maturity Date. Interest will be charged on a 360-day year, divided into twelve (12) segments. Interest charged at all other times will be computed by multiplying the unpaid principal by the interest rate, dividing the result by 365, and then multiplying that daily interest amount by the actual number of days for which interest is then due.

As part of the conversion from biweekly to monthly payments, any automatic withdrawal of payments (auto drafting) in effect with Lender for the Loan are cancelled.

6. Lender acknowledges that one or more of the undersigned may have filed for bankruptcy or may have received a discharge in a bankruptcy proceeding. Said individual(s) acknowledge and agree that this Agreement is not a reaffirmation agreement as defined in 11 U.S.C. §524, that any references in this Agreement that imply liability under the Note obligation instead refer to the amounts secured by the property and is not meant to impart personal liability on such individual(s), and that this Agreement and communications related to this Agreement are not attempts to collect, assess or recover a claim against the individual(s) that arose before the commencement of the bankruptcy or that has been discharged.

Borrower agrees that (a) Borrower has read this Agreement in its entirety; (b) Borrower has consulted, or had opportunity to consult, with an attorney of Borrower's choosing; and (c) Borrower has voluntarily entered into this Agreement.

BORROWER(S):

KENT ZILLIOX

Wells Fargo Bank, N.A.

Mary C. Reeder
Senior Vice President

Case: 13-54453    Doc# 39-2    Filed: 07/25/18    Entered: 07/25/18 15:34:40    Page 13 of 40

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of    CA            )

County of    MONTEREY     )

On NOVEMBER 26, 2007 before me, _____ Cary Dion Joyner , Notary Public

*(here insert name and title of the officer)*

personally appeared KENT ZILLIOX AND CARLA ZILLIOX
_____

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) , and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

CARY DION JOYNER
COMM. #1741848
Notary Public · California
Monterey County
My Comm. Expires Apr. 26, 2011

NR01 · NR01 · NR01

(Seal)

---

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer
  _____
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure that this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

CAPA v12.10.05 © by Association of Professional Notaries & CSA 800-873-9865 www.notaryclasses.com

# EXHIBIT "2"

LSI Local Solutions
Fidelity Information Services

RECORDING REQUESTED BY:
WORLD SAVINGS BANK.

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: Redacted

NOTE AMOUNT. $774,400.00
Redacted

Stephen L. Vagnini            RANJELIQUE
Monterey County Recorder      12/03/2007
Recorded at the request of    12 06 07
Filer

DOCUMENT: 2007090124   Titles 1/ Pages 19

Fees      119 00
Taxes
Other
AMT PAID  $119 00

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST) AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $968,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
      (A)  Security Instrument. This Deed of Trust, which is dated November 20, 2007, will be called the "Security Instrument."

      (B)  Borrower. KENT ZILLIOX AND CARLA ZILLIOX, HUSBAND AND WIFE sometimes will be called "Borrower" and sometimes simply "I" or "me."

Received
DEC 27 2007
Nich Farmer

      (C)  Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612

Redacted

U U J

LENDER'S USE ONLY

SD001A (2004-03-3)
DEFERRED INTEREST                          CA          Page 1

Redacted

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$774,400.00**, plus accrued and deferred interest and such other amounts as stated in the Note and I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by December 15, 2037 ("Maturity Date.")

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and Golden West Savings Association Service Co., A California Corporation is the "Trustee."

**II. BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to

(i) pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii) pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property, and

(iii) keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

**III. DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below.

(i) The Property which is located at 4A BUENA VISTA DEL RIO, CARMEL VALLEY, CA 93924-9713 The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii) All buildings and other improvements that are located on the Described Property.

SD0018 (2004-05-3)
DEFERRED INTEREST                                     Page 2                                          CA

Redacted

(iii) All rights in other property that I have as owner of the Described Property These rights are known as easements, rights and appurtenances attached to the Property,

(iv) All rents or royalties and other income from the Described Property,

(v) All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi) All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property,

(vii) All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section,

(viii) All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future,

(ix) All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

(x) All of the amounts that I pay to Lender under Paragraph 2 below

IV     BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that (i) I lawfully own the Property, (ii) I have the right to grant and convey the Property to Trustee, and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record

I give a general warranty of title to Lender This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have I promise that I will defend my ownership of the Property against any claims of such rights

## COVENANTS

I promise and I agree with Lender as follows

1.     BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes

2     PAYMENTS FOR TAXES AND INSURANCE

(A)     Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any)

SD001C (2004-03-3)                                                                      CA

Redacted

**(B).** **Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any, and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD0010 (2004-03-3)

Page 4                                                                 CA

Redacted

**3    APPLICATION OF BORROWER'S PAYMENTS**
Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes,

Second, to pay any advances due to Lender under this Security Instrument,

Third, to pay the amounts due to Lender under Paragraph 2 above,

Fourth, to pay interest due under the Secured Notes,

Fifth, to pay deferred interest due under the Secured Notes,

Sixth, to pay principal due under the Secured Notes,

Last, to pay late charges due under the Secured Notes.

**4    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up, or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004.03.3)                                                    CA

Case: 13-54453    Doc# 39-2    Filed: 07/25/18    Entered: 07/25/18 15:34:40    Page 20 of 40

Redacted

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004.03.3)                                                    CA

Page 6

Redacted

**7.  LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property  Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs  Lender must give me notice before Lender may take any of these actions  Although Lender may take action under this Paragraph 7, Lender does not have to do so  Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes  I will pay those amounts to Lender when Lender sends me a notice requesting that I do so  Interest on each amount will begin to accrue on the date that the amount is advanced by Lender  However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7  This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest

**8.  LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property  They must do so in a reasonable manner and at reasonable times  Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection

**9  AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights  (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property, and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property  All of those proceeds will be paid to Lender  If I receive any such proceeds, I will immediately deliver them to Lender

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured  If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me  Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction  (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking  The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim  Lender may then use the proceeds to reduce the Sums Secured  The 30-day period will begin when the notice is given

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes

SD0010 (2004-03-3)                                                                                         CA
Page 7

Case: 13-54453    Doc# 39-2    Filed: 07/25/18    Entered: 07/25/18 15:34:40    Page 22 of 40

Redacted

## 10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

**(A) Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B) Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

## 11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

## 12. MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-3)    Page 8    CA

Redacted

**13. LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument

**14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method The notice will be addressed to me at 4A BUENA VISTA DEL RIO, CARMEL VALLEY, CA 93924-9713 A notice will be given to me at an alternative address if I give Lender notice of my alternative address I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement I may designate only one mailing address at a time for notification purposes Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section 1 (C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law

**15. GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes

**16. BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument

**17 LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may (A) collect the rental payments, including overdue rental payments, directly from the tenants, (B) enter upon and take possession of the Property, (C) manage the Property, and (D) sign, cancel and change rental agreements and leases If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold, (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property, and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

SD00N (2004.05.5)

Page 9

CA

Redacted

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**
An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.    CLERICAL ERRORS**
In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**
If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21     WAIVER OF STATUTE OF LIMITATIONS**
I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.    CAPTIONS**
The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.    MODIFICATION**
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**
If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that

(A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001d (2004-03-3)                                          Page 10                                          CA

Case: 13-54453    Doc# 39-2    Filed: 07/25/18    Entered: 07/25/18 15:34:40    Page 25 of 40

Redacted

(B)    The following are called the "Constituent Documents." (i) The declaration or any other document which created the Project, (ii) By-laws of the Owners Association, (iii) Code of regulations for the Project, (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions, (vi) Other equivalent documents

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then  (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property, and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage

(D)    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to  (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking, (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**25    FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument

Page 11                                                                CA

Redacted

**26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii)    Lender approves the creditworthiness of the transferee in writing,

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then-existing terms and conditions with one exception, the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.    SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004.03.3)

Page 12

CA

Redacted

**28.  RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.  RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.  STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2006-09-3)

Page 13

CA

Case: 13-54453   Doc# 39-2   Filed: 07/25/18   Entered: 07/25/18 15:34:40   Page 28 of 40

Redacted

**31 ( X ) QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly This loan is called a "Quick Qualifying Loan " I have stated and I confirm that (A) I do not have any other Quick Qualifying Loans with Lender, (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument, and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes

**32. ( X ) OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan  I have stated and confirm that (A) the Property is my personal and primary residence, (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded, and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

**( X ) VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-3)                    Page 14                                        CA

Redacted

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

BORROWER(S)

_____ (Seal)
KENT ZILLROX

[Notary seal: CARY DION JOYNER, COMM. #1741848, Notary Public - California, Monterey County, My Comm. Expires Apr. 25, 2011]

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD001 (2004-03-1)    [AF1 (2004-03-1)]         Page 15                    CA
                     [301 (2004-03-5)]

Redacted

**BORROWER(S)' SPOUSE(S) OR DOMESTIC PARTNER(S):** The undersigned hereby joins in this Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any current or potential interest in the Property. By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights. No personal liability under the Note is hereby incurred by the undersigned joining spouse or domestic partner.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW).

BORROWER(S)' SPOUSE(S) OR DOMESTIC PARTNER(S):

_____ (Seal)

CARLA ZILLIOX

CARY DION JOY...ES
COMM #174 848
Notary Public  California
Monterey County
My Comm. Expires Apr. 26, 2011

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD001 (2004-03-1)          ALT (2004-03-1)          Page 16          CA

# CALIFORNIA ALL-PURPOSE
## CERTIFICATE OF ACKNOWLEDGMENT

State of ___CA___ )

County of ___MONTEREY___ )

On __NOVEMBER 26, 2007__ before me, _____ Cary Dion Joyner ; Notary Public

(here insert name and title of the officer)

personally appeared ___KENT ZILLIOX AND CARLA ZILLIOX___

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal:

> CARY DION JOYNER
> COMM. #1741848
> Notary Public · California
> Monterey County
> My Comm. Expires Apr. 26, 2011

_____
Signature of Notary Public                                                    (Seal)

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

**DESCRIPTION OF THE ATTACHED DOCUMENT**

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date _____

_____
(Additional information)

**CAPACITY CLAIMED BY THE SIGNER**
- ☐ Individual (s)
- ☐ Corporate Officer

_____
(Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they— is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

CAPA v12 10-05 © by Association of Professional Notaries & CBA 800-873-9865 www.notaryclasses.com

Order No. Redact

Borrower   : Kent Zilliox

**LEGAL DESCRIPTION**

## Exhibit A

The land referred to herein is situated in the State of CA, County of Monterey, Area of (Area of Carmel Valley) and described as follows:

Parcel B, as said Parcel is shown and so designated on that certain Parcel Map filed in Volume 8 of "Parcel Maps" at Page 30, Monterey County Records.

Assessor's Parcel No:       Redacted
Street Address:              4 Buena Vista Del Rio #A
                             (Area of Carmel Valley), CA, 93924

CLTA Preliminary Report Form – Modified (11/17/06)                    Page 2 of 4

WORLD SAVINGS BANK, FSB

# E X H I B I T "A"

## LEGAL DESCRIPTION

LOAN NO. Redacted

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF MONTEREY STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

TAPE ONLY THE LEGAL DESCRIPTION TO THIS PAGE.

END OF DOCUMENT

SD001 (2003-03-2) (GF430A1)                    Page 17 of 17                    CA

# EXHIBIT "3"

Stephen L. Vagnini
Monterey County Recorder

CRALMA
12/08/2016
10:03 AM

**WELLS FARGO BANK-ER INGEO**

DOCUMENT: **2016075137**



| Titles : | 1 | Pages : | 1 |
|---|---|---|---|
| Fees . . . . | | 21.00 |
| Taxes . . . | | .00 |
| Other . . . | | .00 |
| AMT PAID | | $21.00 |

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
1000 BLUE GENTIAN RD #200
MAC: N9289-018
EAGAN, MN 55121-4400

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Monterey, California
"ZILLIOX"

PREPARED BY: WELLS FARGO BANK, N.A.

For Value Received, WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB hereby grants, assigns and transfers to PROF-2013-S3 LEGAL TITLE TRUST IV, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE at 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107 all its interest under that certain Deed of Trust dated 11/20/2007 , in the amount of $774,400.00, executed by KENT ZILLIOX AND CARLA ZILLIOX, HUSBAND AND WIFE to WORLD SAVINGS BANK, FSB and Recorded: 12/03/2007 as Instrument No.: 2007090124 in the County of Monterey, State of California.

In witness whereof this Instrument is executed.

WELLS FARGO BANK, N.A. S/B/M WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS BANK, FSB
On _11/29/16_

_Juliane M Christensen_
Juliane M Christensen
Vice President Loan Documentation

STATE OF _Minnesota_
COUNTY OF _Dakota_

On _11/29/16_ , before me, _Phillip Marquis Smith_ , a Notary Public in the State of _Minnesota_ , personally appeared _Juliane M Christensen_ , Vice President Loan Documentation, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Phillip Marquis Smith_
Phillip Marquis Smith
Notary Expires: 1/31/19

> PHILLIP MARQUIS SMITH
> NOTARY PUBLIC - MINNESOTA
> MY COMMISSION EXPIRES 01/31/19

(This area for notarial seal)

REDACTED

eRecorded

Stephen L. Vagnini
Monterey County Recorder

CRDAWN
8/30/2017
09:09 AM

MERIDIAN ASSET-ER SIMPLIFILE

DOCUMENT: 2017046630

| | | |
|---|---|---|
| Titles: | 1 | Pages: 2 |
| Fees . . . | | 24.00 |
| Taxes . . | | .00 |
| Other . . | | .00 |
| AMT PAID | | $24.00 |

Prepared By and Return To:
Paul Pugzlys
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

REDACTED                                    REDACTED

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **PROF-2013-S3 LEGAL TITLE TRUST IV, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE**, whose address is 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST N.A., AS TRUSTEE OF THE IGLOO SERIES III TRUST**, whose address is 7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain deed of trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Deed of Trust: **11/20/2007**
Original Loan Amount: **$774,400.00**
Executed by (Borrower(s)): **KENT ZILLIOX & CARLA ZILLIOX**
Original Trustee: **GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION**
Original Beneficiary: **WORLD SAVINGS BANK, FSB**
Filed of Record: In Book N/A, Page N/A,
Document/Instrument No: 2007090124 in the Recording District of MONTEREY, CA, Recorded on 12/3/2007.

Property more commonly described as: **4 A BUENA VISTA DEL RIO, CARMEL VALLEY, CA 93924-9713**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: August 4, 2017

**PROF-2013-S3 LEGAL TITLE TRUST IV, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE, BY PRESTON RIDGE PARTNERS III, LLC, ITS ATTORNEY-IN-FACT**

By: SCOTT GILBERT                    Witness Name: Tyler Moser
Title: MANAGER

REDACTED

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of _Arizona_
County of _Maricopa_

On _August 4, 2017_, before me, _Alexandria Davies_, a Notary Public, personally appeared SCOTT GILBERT, MANAGER of/for PRESTON RIDGE PARTNERS III, LLC, AS ATTORNEY-IN-FACT FOR PROF-2013-S3 LEGAL TITLE TRUST IV, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of _Arizona_ that the foregoing paragraph is true and correct. I further certify SCOTT GILBERT, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): _Alexandria Davies_
My commission expires: _October 15, 2020_

ALEXANDRIA JEAN DAVIES
Notary Public - Arizona
Maricopa County
My Comm. Expires Oct 15, 2020

REDACTED

# EXHIBIT "4"

# BSI Financial Services

## Payment Change Notices

| Date | P&I | Escrow | Total | Notice Filed |
|---|---|---|---|---|
| 06/15/16 | $4,055.77 | $654.94 | $4,710.71 | 05/06/16 |
| 04/15/17 | $4,055.77 | $560.11 | $4,615.88 | 03/02/17 |
| 09/15/17 | $4,055.77 | $564.44 | $4,620.21 | 07/21/17 |
| 02/15/18 | $4,055.77 | $653.93 | $4,709.70 | 01/11/18 |
| | | | $0.00 | |

## Loan Information

| | |
|---|---|
| Loan # | |
| Borrower | Zillox, Kent |
| BK Case # | 13-54453 |
| Date Filed | 08/19/13 |
| 1st Post Due Date | 09/01/13 |
| POC Filed | 10/31/13 |
| POC Amount | $76,916.33 |
| TOC Filed | 10/02/17 |

| Date | Amount Rcvd | Post-Petition Due Date | Amt Due | Over/Short | POC Arrears Balance | Payment Date | Payment Amount | POC Paid to Date | Comments |
|---|---|---|---|---|---|---|---|---|---|
| | $4,710.71 | 09/15/13 | $4,710.71 | $0.00 | $76,916.33 | 01/15/14 | $1,022.16 | $1,022.16 | |
| | $4,710.71 | 10/15/13 | $4,710.71 | $0.00 | $75,894.17 | 02/12/14 | $1,793.04 | $2,815.20 | |
| | $4,710.71 | 11/15/13 | $4,710.71 | $0.00 | $74,101.13 | 03/12/14 | $1,793.04 | $4,608.24 | |
| | $4,710.71 | 12/15/13 | $4,710.71 | $0.00 | $72,308.09 | 04/09/14 | $1,793.04 | $6,401.28 | |
| | $4,710.71 | 01/15/14 | $4,710.71 | $0.00 | $70,515.05 | 05/14/14 | $1,793.04 | $8,194.32 | |
| | $4,710.71 | 02/15/14 | $4,710.71 | $0.00 | $68,722.01 | 06/11/14 | $1,793.04 | $9,987.36 | |
| | $4,710.71 | 03/15/14 | $4,710.71 | $0.00 | $66,928.97 | 07/09/14 | $1,793.04 | $11,780.40 | |
| | $4,710.71 | 04/15/14 | $4,710.71 | $0.00 | $65,135.93 | 08/13/14 | $1,793.04 | $13,573.44 | |
| | $4,710.71 | 05/15/14 | $4,710.71 | $0.00 | $63,342.89 | 09/10/14 | $1,793.04 | $15,366.48 | |
| | $4,710.71 | 06/15/14 | $4,710.71 | $0.00 | $61,549.85 | 10/16/14 | $1,798.82 | $17,165.30 | |
| | $4,710.71 | 07/15/14 | $4,710.71 | $0.00 | $59,751.03 | 11/14/14 | $1,798.82 | $18,964.12 | |
| | $4,710.71 | 08/15/14 | $4,710.71 | $0.00 | $57,952.21 | 12/10/14 | $1,798.82 | $20,762.94 | |
| | $4,710.71 | 09/15/14 | $4,710.71 | $0.00 | $56,153.39 | 01/14/15 | $1,798.82 | $22,561.76 | |
| | $4,710.71 | 10/15/14 | $4,710.71 | $0.00 | $54,354.57 | 02/11/15 | $1,764.12 | $24,325.88 | |
| | $4,710.71 | 11/15/14 | $4,710.71 | $0.00 | $52,590.45 | 03/11/15 | $1,764.12 | $26,090.00 | |
| | $4,710.71 | 12/15/14 | $4,710.71 | $0.00 | $50,826.33 | 04/15/15 | $1,764.12 | $27,854.12 | |
| | $4,710.71 | 01/15/15 | $4,710.71 | $0.00 | $49,062.21 | 05/13/15 | $1,764.12 | $29,618.24 | |
| | $4,710.71 | 02/15/15 | $4,710.71 | $0.00 | $47,298.09 | 06/10/15 | $1,764.12 | $31,382.36 | |
| | $4,710.71 | 03/15/15 | $4,710.71 | $0.00 | $45,533.97 | 07/15/15 | $1,820.03 | $33,202.39 | |
| | $4,710.71 | 04/15/15 | $4,710.71 | $0.00 | $43,713.94 | 08/12/15 | $1,820.03 | $35,022.42 | |
| | $4,710.71 | 05/15/15 | $4,710.71 | $0.00 | $41,893.91 | 09/10/15 | $1,820.03 | $36,842.45 | |
| | $4,710.71 | 06/15/15 | $4,710.71 | $0.00 | $40,073.88 | 10/15/15 | $1,820.03 | $38,662.48 | |
| | $4,710.71 | 07/15/15 | $4,710.71 | $0.00 | $38,253.85 | 11/11/15 | $1,778.58 | $40,441.06 | |
| | $4,710.71 | 08/15/15 | $4,710.71 | $0.00 | $36,475.27 | 12/09/15 | $1,778.58 | $42,219.64 | |
| | $4,710.71 | 09/15/15 | $4,710.71 | $0.00 | $34,696.69 | 01/13/16 | $1,778.58 | $43,998.22 | |
| | $4,710.71 | 10/15/15 | $4,710.71 | $0.00 | $32,918.11 | 02/10/16 | $1,778.58 | $45,776.80 | |
| | $4,710.71 | 11/15/15 | $4,710.71 | $0.00 | $31,139.53 | 03/09/16 | $1,778.58 | $47,555.38 | |
| | $4,710.71 | 12/15/15 | $4,710.71 | $0.00 | $29,360.95 | 04/13/16 | $1,771.83 | $49,327.21 | |
| | $4,710.71 | 01/15/16 | $4,710.71 | $0.00 | $27,589.12 | 05/11/16 | $1,771.83 | $51,099.04 | |
| | $4,710.71 | 02/15/16 | $4,710.71 | $0.00 | $25,817.29 | 06/15/16 | $1,771.83 | $52,870.87 | |
| | $4,710.71 | 03/15/16 | $4,710.71 | $0.00 | $24,045.46 | 07/13/16 | $1,771.83 | $54,642.70 | |
| | $4,710.71 | 04/15/16 | $4,710.71 | $0.00 | $22,273.63 | 08/10/16 | $1,771.83 | $56,414.53 | |
| | $4,710.71 | 05/15/16 | $4,710.71 | $0.00 | $20,501.80 | 09/14/16 | $1,771.83 | $58,186.36 | |
| | $4,710.71 | 06/15/16 | $4,710.71 | $0.00 | $18,729.97 | 10/13/16 | $1,771.83 | $59,958.19 | |
| | $4,710.71 | 07/15/16 | $4,710.71 | $0.00 | $16,958.14 | 11/09/16 | $1,766.05 | $61,724.24 | |
| | $4,710.71 | 08/15/16 | $4,710.71 | $0.00 | $15,192.09 | 12/14/16 | $1,766.05 | $63,490.29 | |
| | $4,710.71 | 09/15/16 | $4,710.71 | $0.00 | $13,426.04 | 01/11/17 | $1,766.05 | $65,256.34 | |
| | $4,710.71 | 10/15/16 | $4,710.71 | $0.00 | $11,659.99 | 02/15/17 | $1,766.05 | $67,022.39 | |
| | $4,710.71 | 11/15/16 | $4,710.71 | $0.00 | $9,893.94 | 03/15/17 | $1,766.05 | $68,788.44 | |
| 01/21/17 | $4,710.71 | 12/15/16 | $4,710.71 | $0.00 | $8,127.89 | 04/12/17 | $1,735.20 | $70,523.64 | |
| 03/02/17 | $4,710.71 | 01/15/17 | $4,710.71 | $0.00 | $6,392.69 | 05/10/17 | $1,735.20 | $72,258.84 | |
| 04/13/17 | $4,710.71 | 02/15/17 | $4,710.71 | $0.00 | $4,657.49 | 06/14/17 | $1,735.20 | $73,994.04 | |
| 05/18/17 | $4,710.71 | 03/15/17 | $4,710.71 | $0.00 | $2,922.29 | 07/12/17 | $1,735.20 | $75,729.24 | |
| 07/19/17 | $4,710.71 | 04/15/17 | $4,615.88 | $94.83 | $1,187.09 | 09/28/17 | $1,187.09 | $76,916.33 | |
| 10/24/17 | $9,240.42 | 05/15/17 | $4,615.88 | $103.49 | $4,719.37 | | | $76,916.33 | |
| | | 06/15/17 | $4,615.88 | $103.49 | $0.00 | | | $0.00 | |
| | | 07/15/17 | $4,615.88 | -$4,512.39 | $0.00 | | | $0.00 | |
| | | 08/15/17 | $4,615.88 | -$9,128.27 | $0.00 | | | $0.00 | |
| | | 09/15/17 | $4,620.21 | -$13,748.48 | $0.00 | | | $0.00 | |
| | | 10/15/17 | $4,620.21 | -$18,368.69 | $0.00 | | | $0.00 | |
| | | 11/15/17 | $4,620.21 | -$22,988.90 | $0.00 | | | $0.00 | |
| | | 12/15/17 | $4,620.21 | -$27,609.11 | $0.00 | | | $0.00 | |
| | | 01/15/18 | $4,620.21 | -$32,229.32 | $0.00 | | | $0.00 | |
| | | 02/15/18 | $4,709.70 | -$36,939.02 | $0.00 | | | $0.00 | |
| | | 03/15/18 | $4,709.70 | -$41,648.72 | $0.00 | | | $0.00 | |
| | | 04/15/18 | $4,709.70 | -$46,358.42 | $0.00 | | | $0.00 | |
| | | 05/15/18 | $4,709.70 | -$51,068.12 | $0.00 | | | $0.00 | |
| | | 06/15/18 | $4,709.70 | -$55,777.82 | $0.00 | | | $0.00 | |
| | | 07/15/18 | $4,709.70 | -$60,487.52 | $0.00 | | | $0.00 | |